IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COREY ANDERSON, #329743           *
                    Plaintiff
           v.                     *  CIVIL ACTION NO. AMD-08-2708

WARDEN KATHLEEN GREEN, et al.     *
                    Defendants

                                 ***

MEMORANDUM

On October 7, 2008, this court received for filing a civil rights complaint for damages from former Eastern Correctional Institution ("ECI") inmate Corey Anderson alleging discrimination, harassment and unconstitutional conditions of confinement. Paper No. 1. Plaintiff states that on June 2, 2008, he was placed on ECI administrative segregation because of his "freedom of speech and political beliefs." He claims that defendants used segregation as a "torture tool" to force him to experience physical and mental pain and harassment. He further claims that under prison regulations he should be treated as a general population inmate and not as a "punitive" segregation confinement inmate. *Id.* Plaintiff sets out a list of 16 claims relating to alleged First, Eighth, and Fourteenth Amendment deprivations.[1]

Now before the court are defendants' motion to dismiss or, in the alternative, motion for summary judgment and plaintiff's opposition thereto. Paper Nos. 12 & 20. The case may be

---

[1] These claims are set out as follows: "denied constitutional rights [under the] 1st, 8th, 14th Amendment, harassment by each named defendant, discrimination because of belief, cruel and unusual punishment, mental anguish and mental stress, denied treatment and rights as the general population prisoners, used [the] administration to put up an iron curtain to block plaintiff's constitutional rights to torture him, denied personal property, denied education school programs, denied law books and legal documents, denied mental health and therapy programs, giving cold food on segregation and administrative confinement, denied religious programs, arbitrary power of defendants, used false reports to convert the reality of their wrongdoing for putting plaintiff on administrative segregation for torture, false imprisonment within a prison environment by each named defendants, and denied telephone calls to attorney and family." Paper No. 1 at attachments.

determined without a hearing.  *See* Local Rule 105.6. (D. Md. 2008).  For the reasons set forth within, the motion, construed as a motion for summary judgment, shall be granted.

I.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.   In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  477 U.S. at 249 (1986).   A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact.  However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc*., 369

2

U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir.

2005).  The mere existence of a "scintilla"of evidence in support of the non-moving party's case is

not sufficient to preclude an order granting summary judgment.  *See Anderson*, 477 U.S. at 252.

II.

In their dispositive motion, defendants assert that on June 28, 2008, plaintiff was assigned to

administrative segregation pending adjustment.  Paper No. 12, Ex. 1.  At an adjustment hearing held

on July 2, 2008, plaintiff was found not guilty of violating disciplinary rules 104 and 405 and

returned to general population. *Id.*  That same date, however, plaintiff was returned to administrative

segregation, where he remained "off and on" until his transfer to the North Branch Correctional

Institution  ("NBCI") in January 2009.  Defendants contend that plaintiff fails to identify with any

specificity which legal document he was denied and that there is no attorney listed on his calling list.

*Id*., Ex. 3. They state that during the relevant time period plaintiff made telephone calls to his father,

grandmother, mother, wife, and a friend.  *Id*.

Defendants further state that on September 15, 2008, plaintiff was evaluated in the ECI

Psychology Department regarding his appropriateness for NBCI's Behavioral Management Unit

("BMU"). Paper No. 12, Ex. 4.  It was determined that he was an appropriate candidate for the

BMU. He was transferred to NBCI on January 8, 2009.

Defendants state that, contrary to the allegations of the complaint, there is no record that

plaintiff filed an administrative remedy procedure ("ARP") grievance in June or July 2008 regarding

his placement on administrative segregation.  *Id*., Ex. 5.

In his opposition, plaintiff for the first time invokes this court's jurisdiction under 42 U.S.C.

§ 2000cc and 28 U.S.C. § 1367 over unidentified state law claims  and additionally seeks injunctive

relief.  Paper No. 20.  He argues that he was placed on administrative segregation and harassed for

3

"expressing his beliefs" in the life and times of George Jackson and his movement.[2]  For the first

time, plaintiff complains about his "arbitrary" assignment to administrative segregation on

December 25, 2005.[3]  *Id*.  He seemingly discusses this incident to show that a subsequent pattern of

harassment has occurred "every time an altercation or conflict breaks out between prisoners that he

knows nothing about."  *Id*.  Plaintiff also claims that on December 14, 2007, his visitation privileges

were revoked on false charges that he conspired to smuggle contraband into the prison. *Id*. Touching

upon his original complaint allegations, he alleges that on June 2, 2008, he was placed on

administrative segregation in response to a general population altercation and stabbing.  Plaintiff

maintains that he was released from administrative segregation for 30 days and was then "thrown

back" in administrative segregation.  Paper No. 20.  He again claims that he was placed on

segregation based on false reports.  He claims that he was denied his "ordinary rights and privileges"

including religious programs, access to a law library and attorney telephone calls, school and

educational materials, communications with family and friends, and recreation.[4]  *Id*.

---

[2]George Jackson was a prisoner in the California prison system during the 1960s who became a
communist and a member of the Black Panther Party.  He was one of the "Soledad Brothers" charged with
murdering a prison guard in 1970.  His prison letters were published and he founded the Black Guerrilla
Family while confined in San Quentin.

[3]Plaintiff complains that the 2005 assignment occurred as a result of a fight on the prison grounds
resulting in a stabbing.  Paper No. 20 at p. 4.  He claims he was wrongly accused of being a gang member and
having involvement in the stabbing.  *Id*.  He contends he was released from administrative segregation after
three weeks.

[4]Plaintiff for the first time alleges that on an unspecified date he and another inmate were placed on
an ECI disciplinary segregation unit in a filthy cell infested with roaches, mice, dirt, and vermin covering the
walls and floor.  Paper No. 20, pgs. 7-9.  He claims that on unspecified times he was served cold meals that
were nutritionally deficient causing him to "feel sick and nauseous." *Id*. He also complains that he was
transferred to NBCI without due process and he continues to be denied his rights and privileges, including
access to legal, educational, religious, and public materials and loss of showers. *Id*. Plaintiff states that he was
arbitrarily placed in the BMU at NBCI and he remains on indefinite confinement in the BMU in violation of
his due process rights. Plaintiff shall not be permitted to raise these new claims at this late stage of the
proceedings, and these allegations shall be dismissed without prejudice.  He is free to file them in a new civil
rights action.

III.

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 126 S.Ct. 2378, 2385-86 (2006).  Exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendant(s).  *See Jones v. Bock*, 127 S.Ct. 910, 919-22 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Defendants have raised the failure to exhaust as an affirmative defense and plaintiff does not refute the contention.  In his complaint he states that he filed an ARP with the Warden, but failed to receive a response as part of a "premeditated cover up."  Paper No. 1 at p. 2.  Plaintiff further alleged that he did not file an ARP appeal with the Commissioner because he is also part of the cover up.  *Id.* at p. 3.  Finally, he claims that he did not file a remedy with the Inmate Grievance Office ("IGO") because it does not award damages. *Id.*

This complaint falls under the exhaustion prerequisites of § 1997e(a), and the case must be dismissed unless plaintiff can show that he has satisfied the administrative exhaustion requirement or that defendants have forfeited their right to raise non-exhaustion as a defense.  *See Chase v. Peay*,

286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd,* 98 Fed. Appx. 253 (4th Cir. June 2, 2004) (per curiam).[5] While plaintiff claims that he filed an institutional remedy as to his segregation assignment, there is no record of same.  Further, he acknowledges that he did not file a remedy appeal to the Commissioner or to the IGO.   He did not exhaust these claims under § 1997e(a) and they are therefore not subject to review.   Alternatively, the court finds no Eighth or Fourteenth Amendment deprivation with regard to plaintiff's assignment to, and the conditions of his confinement on, administrative segregation. Each claim shall be addressed *seriatim*.

A.

In general, the Constitution does not entitle a prisoner to be held in any particular prison or classified to any particular security level.  *See Montayne v. Haymes*, 427 U.S. 236, 243 (1976); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Paoli v. Lally*, 812 F.2d 1489, 1493 (4th Cir. 1987).  A liberty interest may, however, be created when state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).   Segregation is not per se cruel and unusual punishment.  *See Allgood v. Morris*, 724 F.2d 1098, 1101 (4th Cir. 1984) (segregated protective custody); *Ross v. Reed*, 719 F.2d 689, 697 (4th Cir. 1983) (administrative segregation).   Under the reasoning of *Sandin*, it appears that no liberty interest is implicated in placement on segregation.  *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997); *Reffitt v. Nixon*, 917 F. Supp. 409, 413 (E.D. Va. 1996).

Plaintiff was originally placed on ECI administrative segregation pending adjustment.  He was reassigned to general population housing on August 8, 2008, but returned to administrative

---

[5]Under *Chase*, a Maryland inmate may satisfy exhaustion by seeking review of an Administrative Remedy Procedure ("ARP") complaint denial from the Warden to the Commissioner and then appealing the Commissioner's decision to the Inmate Grievance Office ("IGO"), the *final level* of appeal within Maryland's administrative grievance system for prisoners.  *See Chase v. Peay*, 286 F.Supp.2d 523 at 529 (emphasis added).

segregation on September 22, 2008, remaining there until his transfer to NBCI on January 8, 2009.

Although defendants fail to provide the court the precise reasons for the subsequent assignments, no due process deprivation has been demonstrated because plaintiff cannot establish that his administrative segregation assignment was atypical.   It is not "atypical" for inmates to be placed on segregation or to be housed at a particular prison for any number of reasons.   Moreover, plaintiff has not demonstrated that the conditions of his assignment to ECI administrative segregation were significantly more onerous than his previous housing situations.[6]  *See Beverati,* 120 F.3d at 504 (conditions of administrative segregation at Maryland Penitentiary); *Knox v. Lanham*, 895 F. Supp. 750, 758-59 (D. Md. 1995) (administrative segregation at ECI).

### B.

Plaintiff claims that defendants used false adjustment reports to place him on administrative segregation.   Defendants correctly observe that plaintiff has no constitutionally protected right from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.   *See Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986).

### C.

Plaintiff claims that he was denied law books, legal documents, and telephone calls to his attorney while assigned to ECI administrative segregation. To the extent that he is raising a Fourteenth Amendment access-to-courts claim, the court finds no constitutional deprivation. Inmates are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977);

---

[6]It is not disputed that ECI administrative segregation inmates have the same mail and commissary privileges as general population inmates.   They are, however, handcuffed when shackled outside their cell, and are limited to a daily one-hour period of out-of-cell recreation, two showers per week, a monthly haircut, and a minimum of a weekly change of linens. Paper No. 12, Ex. 7.

*Hudspeth v. Figgins*, 584 F.2d 1347 (4ᵗʰ Cir. 1978).  In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmate's right of access to the courts is actionable, but only where the inmate is able to demonstrate actual injury from such deprivation.  *Id*. at 349.  The actual injury requirement, however, is not satisfied by just any type of frustrated legal claim.  *Id*. at 353.  Rather, the *Lewis* Court concluded that *Bounds v. Smith*, *supra*, stood essentially for the proposition that inmates are not guaranteed the ability to litigate every imaginable claim they can devise, but that they have the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*. at 355.

Plaintiff has failed to show actual harm or prejudice from the alleged denial of legal materials and books.  Further, while he complains about his inability to telephone his attorney, records show that he did not have an attorney listed on his assigned telephone list.  Further, he has failed to show he was otherwise unable to contact his attorney through other means or that his inability to contact his attorney caused him real legal harm.

### D.

Although educational programming may serve an important rehabilitative function, the law is well settled that an inmate has no constitutional due process right to participate in a rehabilitative program.  *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9, (1976);  *Meachum v. Fano*, 427 U.S. 215 (1976); (due process clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss").  Plaintiff has no constitutionally protected right to educational programming.

With regard to mental health and therapy programming, such rehabilitation is not constitutionally required.  *See Bowring v. Goodwin*, 551 F.2d 44, 48 n.2 (4th Cir. 1977).  Further, at no point does plaintiff allege that he has a serious mental health problem that requires management or counseling and that defendants were deliberately indifferent to such care.  *See Estelle v. Gamble*, 429 U.S. 97, 101 (1976).  There is no allegation plaintiff was receiving mental health care prior to his administrative segregation confinement or that he required such treatment.[7]

E.

Plaintiff has failed to project evidence of Eighth Amendment violations regarding the conditions of confinement on administrative segregation. There is no showing that he was deprived of an objectively serious basic human need, that defendants Green, Wisengoff, and Holmes acted with a sufficiently culpable state of mind to expose him to extreme conditions, and that he suffered a significant or serious physical injury as a result of the challenged conditions.  *See Strickler v. Waters*, 989 F. 2d 1375, 1379, 1880-81 (4th Cir. 1993); *Hudson v. McMillian*, 503 U. S. 1, 9 (1992); *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997).

---

[7] Indeed, when seen in the psychology department in September 2008 for an evaluation as to possible transfer to NBCI, plaintiff denied a history of, or current, mental health problems.  Paper No. 12, Ex. 4.

IV.

For the above reasons, defendants' motion for summary judgment shall be granted.[8] An Order follows.[9]

Date:  August 24, 2009                                       _/s/_____
                                                                        Andre M. Davis
                                                                        United States District Judge

---

[8]Plaintiff alleges he was denied access to "religious programs" while confined on administrative segregation.  Neither the complaint nor opposition provides particulars regarding this allegation. Defendants do not directly respond to this naked assertion except to generally claim that religious access is available to administrative segregation inmates under prison directives. Consequently, the claim shall be dismissed without prejudice.

[9]The court declines to exercise jurisdiction over whatever state law claims plaintiff intended to raise under 28 U.S.C. § 1367.